IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCTAVIA ORR, o/b/o ADH, | ) CASE NO. 1:11 CV 192 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Octavia Orr, on behalf of her minor child A.D.H., seeking judicial review of the decision of the Commissioner of Social Security that denied Orr's application for children's supplemental security income (SSI).[2] The Commissioner has filed an answer[3] and the transcript of the administrative proceedings.[4]

---

[1] The parties have consented to my exercise of jurisdiction (ECF # 24), and accordingly United States District Judge James S. Gwin has transferred this matter to me for further proceedings. (ECF # 25).

[2] ECF # 1.

[3] ECF # 9.

[4] ECF ## 10, 17.

Pursuant to my initial order,[5] each party has briefed its position[6] and filed supplemental fact sheets[7] or charts.[8] The parties have participated in an oral argument.[9]

For the reasons that follow, I will find that the decision of the Commissioner is supported by substantial evidence and will, therefore, be affirmed.

## Facts

**A.     The decision of the Administrative Law Judge (ALJ)**

A.D.H. was only three years old at the time of the hearing, and the application on his behalf for benefits was filed within weeks of his birth.[10] The ALJ found that A.D.H. was born with multiple congenital abnormalities of his right arm, wrist, and hand.[11] He underwent surgery at age two to remove two accessory fingers from his right hand, and will need more surgery.[12] He has also undergone physical and occupational therapy for his arm impairment.[13]

---

[5] ECF # 5.

[6] ECF # 19 (Orr's brief), ECF # 21 (Commissioner's brief), ECF # 23 (Orr's reply brief).

[7] ECF # 12 (Orr's fact sheet).

[8] ECF # 21, Attachment (Commissioner's charts).

[9] ECF # 27.

[10] Transcript (Tr.) at 14.

[11] *Id.*

[12] *Id.* at 15.

[13] *Id.* at 14.

In addition, psychological evaluations in 2009 showed A.D.H. had oppositional defiant disorder and disruptive behavioral disorder.[14]

Based on the above evidence, that ALJ concluded that A.D.H. had the following severe impairments: right arm and hand deformity, oppositional defiant disorder but not treated.[15]

With the assistance of testimony at the hearing from a medical expert, Arthur Newman, M.D., the ALJ addressed whether A.D.H. met or equaled listing §§ 101.02B[16] and 112.08.[17] A.D.H. was found not to meet listing § 101.02B because only the right arm is involved.[18] As to the list concerning personality disorder, the medical examiner testified that it is difficult to be certain of such a diagnosis in someone as young as A.D.H.

Accordingly, the ALJ analyzed whether A.D.H. had an impairment or combination of impairments that functionally equaled a listing. To that point, the ALJ extensively examined A.D.H.'s limitations in terms of the six domains of function:

---

[14] *Id.*

[15] *Id.*

[16] Listing § 1.02 deals with major dysfunction of a joint(s) due to any cause. Meeting the listing requires either (A) involvement of one major peripheral weight-bearing joint, resulting in an inability to ambulate effectively, or (B) involvement of one major peripheral joint in each upper extremity.

[17] Listing § 112.08 deals with personality disorders in persons under age 18, with distinctions applicable to older infants and toddlers (age 1 to 3) and children (age 3 to 18).

[18] Tr. at 14.

      a.      Acquiring and using information;

      b.      Attending and completing tasks;

      c.      Interacting and relating with others;

      d.      Moving about and manipulating objects;

      e.      Caring for self; and

      f.      Health and physical well-being.[19]

Relying on the testimony of the medical expert, a board-certified pediatrician, the ALJ found that A.D.H. had:

- <u>no limitation in one domain</u> – acquiring and using information;[20]

- <u>less than marked limitations in four domains</u> – attending and completing tasks,[21] moving about and manipulating objects,[22] caring for himself,[23] and health and physical well-being;[24]

- <u>marked limitation in one domain</u> – interacting and relating with others.[25]

Because A.D.H. did not have an impairment or impairments that resulted in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, the ALJ

---

[19] Tr. at 16-21.

[20] *Id.* at 17.

[21] *Id.*

[22] *Id.* at 19.

[23] *Id.* at 21.

[24] *Id.*

[25] *Id.* at 18.

determined that A.D.H. did not meet, medically equal, or functionally equal any listed impairment and thus determined that he was not disabled.[26]

**B.    Issues on judicial review**

Orr raises four issues for judicial review in this matter:

1. The ALJ's decision to deny benefits is not supported by substantial evidence where the ALJ ignored much of the evidence.

2. The ALJ's decision to deny benefits is not supported by substantial evidence where the ALJ failed to apply the "whole child" approach to functional equivalency as required by Social Security Rulings 09-1p - 09-8p.

3. The ALJ's decision that the child is not disabled is not supported by substantial evidence where the ALJ relied almost exclusively on the testimony of Dr. Newman.

4. The ALJ failed to fully and fairly develop the record.[27]

## Analysis

**A.    Standard of review – substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[26] *Id.* at 21-22.

[27] ECF # 19 at 2.

> this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[28]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[29] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[30]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B. Application of standard – the Commissioner's decision here is supported by substantial evidence and is, therefore, affirmed.**

*1. Qualifications for children's SSI*

In order to qualify for children's SSI benefits, a claimant must show that he or she "has a medically determinable physical or mental impairment, which results in marked and

---

[28] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[29] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[30] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[31]

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of qualifying for children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R., pt. 404, subpt. P 20 C.F.R. § 416.924(a)? If so, benefits are granted.[32] An impairment which meets or medically equals the severity of a set of criteria for an impairment in the Listing, or which functionally equals a listed impairment, causes marked and severe functional limitations.[33]

In determining whether a child's impairment functionally equals a Listing, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

---

[31] 42 U.S.C. § 1382c(a)(3)(C)(i).

[32] 20 C.F.R. § 416.924(a)-(d).

[33] 20 C.F.R. § 416.924(d).

  5.  Caring for yourself; and

  6.  Health and physical well-being.[34]

To functionally equal an impairment in the Listings, an impairment must result in "marked" limitations[35] in two domains of functioning or an "extreme" limitation[36] in one domain.[37] The relevant factors that will be considered in making this determination are (1) how well the child initiates and sustains activities, how much extra help he or she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his or her medications or other treatment.[38]

If the child's impairments meet, medically equal, or functionally equal the listings, and if the impairments satisfy the durational requirement, then the child is considered disabled.[39] If both of these requirements are not met, then the child is not considered disabled.[40]

---

[34] 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

[35] An individual has a "marked" limitation when the impairment "seriously interferes with [the] ability to initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id*.

[36] An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation may also seriously limit day-to-day functioning. *Id*.

[37] 20 C.F.R. § 416.926a(d).

[38] 20 C.F.R. § 416.926a(a)(1)-(3).

[39] 20 C.F.R. § 416.924(d)(1).

[40] 20 C.F.R. § 416.924(d)(2).

In addition, when determining functional equivalence, Social Security Ruling (SSR) 09-1p directs the ALJ to consider the "whole child." This approach requires the ALJ to consider the following:

1. How does the child function? "Functioning" refers to a child's activities: that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with care givers, playing with friends, and doing class assignments. We consider:

    • What activities is the child able to perform?

    • What activities is the child not able to perform?

    • Which of the child's activities are limited or restricted?

    • Where the child has difficulty with activities – at home, in childcare, at school, or in the community,

    • Whether the child has difficulty independently initiating, sustaining, or completing activities,

    • The kind of help, and how much help the child needs to do activities, and how often the child needs it, and

    • Whether the child needs a structured or supportive setting, what type of structure or support the child needs, and how often the child needs it.

2. Which domains are involved in performing the activities? We assign each activity to any and all of the domains involved in performing it. Many activities require more than one of the abilities described by the first five domains and may also be affected by problems that we evaluate in the sixth domain.

3. Could the child's medically determinable impairment(s) account for limitations in the child's activities? If it could, and there is no evidence to the contrary, we conclude that the impairment(s) causes the activity limitations we have identified in each domain.

-9-

> 4. To what degree does the impairment(s) limit the child's ability to function age-appropriately in each domain? We consider how well the child can initiate, sustain, and complete activities, including the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant to the degree of the determination of the degree of limitation.[41]

It is important to note – as federal courts in Ohio have recently observed[42] – that SSR 09-1p also states:

> However, we do not require our adjudicators to discuss all the considerations in the sections below in their determinations and decisions, only to provide sufficient detail so that any subsequent reviewers can understand how they made their findings.

## 2. *The Commissioner's decision here is supported by substantial evidence.*

Inasmuch as the ALJ did find that A.D.H. had a marked limitation in the domain of interacting and relating to others, Orr's assertions of error focus largely on her contention that the ALJ should have also found a marked limitation in the domains of moving about and manipulating objects and health and physical well-being.[43]

I note initially that the ALJ here provided virtually a full-page analysis of each domain, first setting forth the details of the applicable regulations and then relating the

---

[41] SSR 09-1p (internal citations omitted).

[42] *See, e.g., Vanselow o/b/o D.R.V. v. Comm'r of Soc. Sec.*, No. 1:11-CV-616, 2012 WL 3678635, at *8 (S.D. Ohio Aug. 24, 2012); *Sailes o/b/o A.H. v. Comm'r of Soc. Sec.*, No. 1:11CV518, 2012 WL 1066776, at *6 (N.D. Ohio March 28, 2012); *Worwell o/b/o G.W. v. Astrue*, No. 1:10CV1307, 2012 WL 669974, at *5 (N.D. Ohio Feb. 29, 2012).

[43] *See*, ECF # 23 at 2.

findings of the medical expert and others to the relevant factors. With such a record, I find that the decisions here are clearly stated and the ALJ's reasoning permits meaningful review.

As regards the domain of moving about and manipulating objects, the ALJ first cited to the opinion of the medical expert, who found that A.D.H. "is able to move about, but is not able to function completely."[44] Dr. Newman based this conclusion on the fact that A.D.H. "is able to accomplish things by using the right hand as an auxiliary to aid the left hand."[45] The ALJ then cited to four separate evidentiary sources from the immediate past six months that showed:

- At an occupational therapy evaluation done in April, 2009, when A.D.H. was 25 months old, he was functioning at the 23-24 month level;[46]

- At an evaluation done three months later, in July, 2009, A.D.H. was able "to catch a ball with both hands, using his left hand and right wrist." While he did not pick up objects with his right hand "he sometimes placed objects in his right hand using his left hand," and was able to use his right hand to "grasp larger items such as one inch and larger blocks between his fingers and wrist," while being able to use a "scissors grasp to hold smaller items such as pennies;"[47]

- A school psychologist who evaluated A.D.H. in 2009 reported that he could climb and descend a four foot ladder without a problem;[48]

---

[44] Tr. at 19.

[45] *Id.*

[46] *Id.*

[47] *Id.* at 20.

[48] *Id.*

- In May, 2009, A.D.H did not qualify for special education in the motor area because his gross motor skills were within an age-appropriate range and his difficulty manipulating small objects was due, in part, to him having a splint on his right arm from recent surgery.[49]

In addition, the ALJ herself noted that at both hearings[50] A.D.H. used his left hand as the dominant hand, but was otherwise able to play with the hearing microphone with both hands.[51]

Orr essentially raises four arguments concerning this finding:

1. The ALJ failed to consider (a) statements and functional questionnaires by Orr and her father (A.D.H's grandfather); (b) the opinion of John Mormol, M.D., a state reviewing physician; (c) a report from an examination of A.D.H. by Mary Schiavone, at Help Me Grow; (d) the prior testimony of Dr. Morrow-White; and (e) treatment records from MetroHealth.[52]

2. The ALJ failed to employ the "whole child analysis" of SSR 09-01p and use its standard of comparison whereby a claimant's functioning in daily settings is compared to other children of the same age who do not have the claimant's impairments.[53]

3. The ALJ "improperly relied upon the testimony of Dr. Newman to the exclusion of almost all other evidence of record." Orr maintains that

---

[49] *Id.*

[50] Procedurally, there was a hearing before the ALJ in February, 2009, at which the ALJ found that further evaluation of A.D.H.'s cognitive and behavioral functions was required, and so the hearing was continued so that a consultative examination could be done. *See*, Tr. at 382-406.

[51] Tr. at 20.

[52] ECF # 19 at 4-6.

[53] *Id.* at 9-10.

-12-

>  this reliance was detrimental because Dr. Newman was "not aware of or familiar with age appropriate tasks for a three year old."[54]

4.  The ALJ failed to develop the record. Here, Orr asserts that a consultative examination should have been done by MetroHealth, where A.D.H. had been treated, as was recommended by the medical expert in the first hearing.[55]

I will address these arguments below *seriatum*.

*a.   Failure to address other evidence*

As was developed at the oral argument, this contention by Orr suggests Sherlock Holmes's famous dog that didn't bark. In particular, while Orr claims that the ALJ neglected or ignored evidence from A.D.H.'s family and from MetroHealth, the fact is that such evidence was not put forward by Orr. Neither Orr nor her father testified at the hearing, and no MetroHealth report was ever submitted, despite the fact that the initial hearing was continued, in large part, so that such a report could be obtained. As such, it is difficult to argue the ALJ was ignoring evidence when such evidence was not before her. The burden is on Orr to establish disability.[56]

As to the opinion of Dr. Mormol, the Commissioner correctly notes that Dr. Mormol evaluated records only through May, 2006 – or fully three years before the hearing in 2009.[57]

---

[54] *Id.* at 10-13.

[55] *Id*. at 13-16.

[56] *See*, 20 C.F.R. § 404.1512(a); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

[57] ECF # 21 at 9.

-13-

During those three years, as Orr herself emphasizes, A.D.H. underwent multiple surgeries and therapies. Dr. Mormol's opinion thus did not consider multiple, significant facts arising after that opinion, and so it is properly understood as outdated and thus of limited relevance. Moreover, Dr. Mormol never examined A.D.H. but only conducted a records review.[58] While the ALJ should have specifically noted and assigned some weight to Dr. Mormol's opinion, I find that any error in this regard is harmless[59] given the obvious lack of relevance of the outdated opinion from a non-treating source.

As to the Schiavone opinion, it is clear that she is not a physician[60] and, therefore, not a treating source whose opinion must be addressed and reasons given for any weight assigned. In addition, somewhat like the opinion of Dr. Mormol, Schiavone gave her opinion in April, 2008, or more than a year before the hearing, and nine months before A.D.H. had the surgery to remove the two accessory fingers. The distance in time between Schiavone's opinion and the hearing, as well as the fact that A.D.H.'s basic physical condition had substantially changed, likewise makes this opinion of very limited relevance. As with Dr. Mormol, if it was error not to discuss Schiavone's opinion, that error was harmless.

Finally, as for Dr. Morrow-White, the Commissioner notes that she did not opine as to A.D.H.'s level of functioning in any domain, nor did she discuss the functional

---

[58] Tr. at 129-30.

[59] Dr. Mormol was not a treating source, and the ALJ was not required to give good reasons for any weight she assigned to his opinion. *See*, *Perry ex rel. G.D. v. Comm'r*, No. 12-5179, 2012 WL 4460654, at * 2 (6th Cir. Sept. 27, 2012) (citations omitted).

[60] *See*, Tr. at 134-39 where her credentials are given as "M.Ed."

significance of any particular medical finding.[61] Rather, Dr. Morrow-White stated that A.D.H. should be further evaluated; and the hearing, as noted, was continued for that purpose. As such, I find no error in failing to discuss Dr. Morrow-White's testimony at the second hearing.

b.      *Whole child analysis/development of the record*

To the degree that Orr here asserts that the failure of the ALJ to explicitly apply a "whole child" analysis here was "legal error,"[62] I note, as was discussed above, that SSR 09-1p, by its own terms, does not mandate that an ALJ specifically discuss all the considerations set forth there, but only requires that the discussion and decision "provide sufficient detail" to permit meaningful review.

That said, Orr contends that a whole child analysis would have addressed the evidence provided by her questionnaires and those of her father, as well as contained articulated findings by the ALJ on how A.D.H. would perform daily activities.[63]

As concerns the questionnaires, Orr's first questionnaire was completed only three weeks after A.D.H.'s birth. There, Orr herself noted that many of her answers about his limited functions were because "He's too young only three weeks old to do many of these

---

[61] ECF # 21 at 10.

[62] ECF # 23 at 5.

[63] ECF # 19 at 8-10.

things."[64] In the second questionnaire,[65] completed in January, 2008, Orr noted marked or extreme difficulties in areas of this domain[66] that in April of that same year an occupational therapy evaluation found that A.D.H was functioning only a month or two behind age level.[67] A July 2008 evaluation also found evidence A.D.H. was functioning better in this domain than he had in January. The questionnaire from A.D.H.'s grandfather[68] is not dated and so it is difficult to ascertain its relevance.

While it would have been preferable for the ALJ to have noted Orr's questionnaire in the discussion of the most current functional evidence that was discussed, I find that the more current functional evidence provides a reviewable record on which to evaluate the ALJ's decision under the whole child approach. SSR 09-1p requires no more.

Orr further argues here that Dr. Newman's opinion is unreliable because he could not articulate the functional standards to which he was comparing A.D.H.'s level of function.[69] As she further maintains with her assertion that the record should have been expanded to

---

[64] Tr. at 83.

[65] *Id.* at 257-63.

[66] *Id.* at 255.

[67] *Id.* at 150-53.

[68] *Id.* at 250-56.

[69] ECF # 19 at 12-13.

address this issue, Orr contends that Dr. Newman himself indicated that he lacked a numerical evaluation of function from a physical therapist.[70]

A careful review of the hearing transcript shows that there was a lengthy and detailed review of this issue. In the end, Dr. Newman testified that A.D.H. had a less than marked limitation – an opinion that was not expressly grounded on any numerical functional test but rather on his professional opinion of all the evidence. Although that can seem imprecise, such interpretation of raw medical data into functional terms is what medical experts are called to do. While Orr may plausibly contend that evidence in the record supports her view, the opinion of the medical expert is substantial evidence in support of the Commissioner's decision.[71]

In addition, while it seems clear that this case would have benefitted from the inclusion of a report from MetroHealth, Orr must bear the responsibility for its absence, since, as the ALJ correctly noted, the prior hearing was continued for precisely that reason.[72]

Finally, although the specifics of the preceding discussion have highlighted the Commissioner's decision as regards the domain of moving about and manipulating objects, the analysis is applicable to Orr's contention that there was a lack of substantial evidence to support the decision in the domain of health and physical well-being.

---

[70] *See*, Tr. at 376.

[71] *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 833 (6th Cir. 2009).

[72] Tr. at 380.

## Conclusion

This is a difficult case involving a young person who has endured a great deal and has a future containing more challenges. Because his situation has continued to change with normal development as well as his multiple surgeries and therapies, it can be difficult to form a complete picture of his condition by extrapolating from any single snapshot taken during these early years.

However, given that the claimant must establish disability and that the Commissioner's decision will be affirmed even if the reviewing court would decide the matter differently or substantial evidence also supports the opposite conclusion,[73] I find, for the reasons given, that the Commissioner's decision is supported by substantial evidence and is thus affirmed.

IT IS SO ORDERED.


Dated:   September 30, 2012                              s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[73] *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).